**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
Steven M. Skolnick, Esq.
S. Jason Teele, Esq.
Nicole Stefanelli, Esq.
Shirley Dai, Esq.
Anthony De Leo, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Kid Brands, Inc., *et al.*,[1] | Case No. 14 - 22582 (   ) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY CERTAIN
<u>PRE-PETITION CLAIMS OF CERTAIN CRITICAL VENDORS</u>**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), by and through their proposed undersigned counsel, submit this motion (the "**Motion**") for entry of an (a) interim order (the "**Interim Order**"), substantially in the form attached hereto as **Exhibit A**, and (b) a final order (the "**Final Order**"), substantially in the form attached hereto as **Exhibit B** authorizing, but not directing, the Debtors to pay certain pre-petition claims of certain critical vendors. In support of this Motion, the Debtors submit the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Kid Brands, Inc. (5337); Kids Line, LLC (0448); Sassy, Inc. (9722); I&J Holdco, Inc. (1543); LaJobi, Inc. (1450); CoCaLo, Inc. (3844); and RB Trademark Holdco, LLC (0611). The Debtors' corporate headquarters are located at 301 Route 17 North, 6th Floor, Rutherford, New Jersey 07070.

*Declaration in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), filed contemporaneously herewith, and respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* dated as of September 18, 2012 (Simandle, C.J.). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief sought herein are sections 105(a), 363, 364, 503(b), 507(a)(2), 1107 and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the applicable Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**").

## BACKGROUND

3. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").

4. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no trustee, examiner or creditors' committee has been requested or appointed.

5. Additional background facts surrounding the commencement of these Chapter 11 Cases are more fully described in the First Day Declaration.

## RELIEF REQUESTED

6. By this Motion, the Debtors seek entry of interim and final orders authorizing, but not directing, the Debtors to pay pre-petition claims of certain vendors that are critical to the Debtors' operations, as more fully described herein (the "**Critical Vendor**

**Claims**"), up to $500,000 on an interim basis, and up to $1 million on a final basis. No Critical Vendor Claims will be afforded administrative priority status in the Chapter 11 Cases.

## CRITICAL VENDORS

7. The Debtors' products are manufactured by third-party vendors, principally located in the People's Republic of China and other East Asian countries. Without delivery of finished product from these third-party manufacturers, the Debtors would be without their sole source of revenue.

8. The Debtors, with the assistance of their legal and financial advisors, have spent significant time reviewing and analyzing their books and records and consulting operations and purchasing personnel to identify critical business relationships and/or suppliers of goods and services (the "**Critical Vendors**"),[2] the loss of which could immediately and irreparably harm the Debtors' businesses, shrink their market share, reduce their enterprise value and/or significantly impair the value of their assets. As part of this process, the Debtors considered a variety of factors, including, without limitation:

(i) whether a particular vendor is a "single source" supplier;

(ii) whether there are alternative vendors who can provide requisite volumes of similar goods or services on better (or equal) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

(iii) whether the Debtors have sufficient inventory to continue operations while a replacement vendor, if any, can be found;

(iv) whether the failure to pay amounts owed would cause the Debtors to incur higher costs or cause the Debtors to lose significant sales or future revenue;

(v) whether an agreement exists that would compel the vendor to maintain its commercial relationship with the Debtors and, if so, whether the enforcement thereof could be

---

[2] The Debtors will provide the list of Critical Vendors to their post-petition secured lender, the United States Trustee, and any Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases, provided that such information is treated as confidential.

      accomplished in a timely and cost-efficient manner without unduly disrupting the Debtors' business;

(vi) whether a vendor meeting the foregoing criteria is able or likely to refuse to ship products to the Debtors post-petition if their pre-petition balances are not paid; and

(vii) whether certain vendors may be entitled to request an administrative expense priority claim under section 503(b)(9) of the Bankruptcy Code to the extent they delivered, and the Debtors received, goods within the 20-day period prior to the Petition Date.

9. There are approximately ten (10) Critical Vendors and the pre-petition trade amount owed to them represents approximately 22% of the Debtors' total pre-petition trade obligations of approximately $26.4 million.  Moreover, the Debtors estimate that, as of the Petition Date, they owe the Critical Vendors approximately $427,662 in the aggregate for goods received by the Debtors within the 20 days of the Petition Date (approximately 7% of the pre-petition Critical Vendor claims), which amounts will be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.

10. In the ordinary course of business, the Debtors purchase goods or services from Critical Vendors that, as an actual or practical matter, may be the only supplier available to the Debtors.  Certain of the Critical Vendors are sole-source providers.  Other Critical Vendors are impossible to replace given an approximately four (4) month lead time from the time the Debtors place an order until the goods are delivered.  The long lead time results from myriad factors, including a vendor's procurement of raw materials, the creation and approval of product dyes and castings, quality control issues, and shipment from overseas factories.

11. Having to replace Critical Vendors who are holding finished products or who are in the process of fulfilling the Debtors' orders would be tremendously detrimental to the Debtors' business.  These goods were ordered months in advance by the Debtors' customers and any delay in delivery or variance in quality may cause the Debtors' customers to cancel their orders and/or seek alternate suppliers.  As such, the goods or services provided by Critical

Vendors are essential to maintaining the Debtors' customer base and to preserving the going concern value of their business.

12. The Debtors have identified the vendors that are essential to the Debtors' ongoing operations and these Chapter 11 Cases. The Debtors propose to condition the payment of Critical Vendor Claims on the agreement of the individual Critical Vendor to continue supplying goods and services to the Debtors on terms that are as, or more, favorable to the Debtors as the most favorable trade terms, practices, and programs in effect between the Critical Vendor and the Debtors in the twelve (12) months prior to the Petition Date (the "**Customary Trade Terms**"), or such other trade terms as are agreed to by the Debtors and the Critical Vendor. The Debtors reserve the right to negotiate new trade terms with any Critical Vendor as a condition to payment of any Critical Vendor Claim.

13. For those Critical Vendors who have agreed to provide goods to the Debtors on terms different from their Customary Trade Terms, the Debtors reserve the right to seek written acknowledgment of such terms on a case-by-case basis. Nothing in this Motion or any order of this Court approving this Motion should be construed as a waiver by the Debtors of their right to contest any invoice of a Critical Vendor under applicable non-bankruptcy law.

14. If a Critical Vendor refuses to supply goods to the Debtors on Customary Trade Terms following payment of any portion of its Critical Vendor Claim, or fails to comply with any trade agreement it entered into with the Debtors (a "**Trade Agreement**"), the Debtors hereby seek authority to, in their discretion and without further order of the Court, (i) declare that any Trade Agreement between the Debtors and such Critical Vendor is terminated (if applicable), and (ii) declare that any payments made to such Critical Vendor on account of its Critical Vendor Claim, whether pursuant to a Trade Agreement or otherwise, be deemed to have been in payment of then-outstanding post-petition claims of such Critical Vendor and any further payments contemplated under a Trade Agreement would not be due or payable without further order of the Court.

15. In the event the Debtors exercise either of the rights set forth in the preceding paragraph, the Debtors request that the Critical Vendor against which the Debtors exercise such rights be required to immediately return to the Debtors any payments made on account of its Critical Vendor Claim to the extent that such payments exceed the post-petition amounts then owed to such Critical Vendor, without giving effect to any rights of setoff or reclamation. In essence, the Debtors seek to return the parties to their respective positions immediately prior to entry of the Order in the event a Trade Agreement is terminated or a Critical Vendor refuses to supply goods or services to the Debtors on Customary Trade Terms or other terms acceptable to the Debtors following payment of any portion of its Critical Vendor Claim. The Debtors seek authority to terminate any Trade Agreement in their sole and absolute discretion.

16. The Debtors believe that authority to pay the Critical Vendor Claims is vital to these Chapter 11 Cases. If this Motion is not granted, the Debtors believe that the Critical Vendors will stop providing goods to the Debtors on Customary Trade Terms, effectively reducing the amount of trade credit available to the Debtors on a post-petition basis. Moreover, if the Critical Vendor Claims are not paid, the Debtors believe that certain Critical Vendors will stop doing business with the Debtors altogether. Such a result could be disastrous to the Debtors and their estates.

17. The continued availability of trade credit in amounts and on terms consistent with those the Debtors enjoyed pre-petition is critical to the Debtors because it allows the Debtors to preserve working capital. The retention or reinstatement of Customary Trade Terms will therefore enable the Debtors to maximize the value of their businesses. Conversely, a deterioration of post-petition trade credit available to the Debtors and a disruption or cancellation of deliveries of merchandise – many of which are not readily replaceable – would cripple the Debtors' business operations, increase the amount of funding needed by the Debtors post-petition (which funding may not be readily available), and ultimately impede the Debtors' ability

to sell their businesses as a going concern, thereby maximizing distributions to the Debtors' creditors and other stakeholders.

18.  For the foregoing reasons, the Debtors respectfully submit that authority to pay the Critical Vendor Claims on the terms set forth herein is in the best interests of the Debtors, their estates, customers and creditors, and therefore should be granted.

## BASIS FOR RELIEF

**A.  This Court May Authorize Payment of the Critical Vendor Claims Pursuant to Sections 363 and 364 of the Bankruptcy Code**

19.  The Court may grant the relief requested herein pursuant to sections 363 and 364 of the Bankruptcy Code. *See, e.g., In re Armstrong World Indus., Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (authorizing, pursuant to section 363 of the Bankruptcy Code, a contractor to pay pre-petition claims of some suppliers who were potential lien claimants because the payments were necessary for the general contractors to release funds owed to the debtors); *In re MPC Computers, LLC*, Case No. 08-12667 (PJW) (Bankr. D. Del. Nov. 10, 2008) (authorizing, pursuant to section 363 of the Bankruptcy Code, the payment of pre-petition claims of some suppliers); *In re UAL Corporation, et al.*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002) (an essential trade motion generated by section 363 is "completely consistent with the Bankruptcy Code" and such payments have further support where the debtor seeks "the extension of credit under section 364 on different than usual terms, terms that might include payment of a pre-petition obligation").

20.  The relief requested in this Motion contemplates the payment of Critical Vendors Claims of those Critical Vendors who agree to provide post-petition goods or services to the Debtors on Customary Trade Terms.  As a result, the payment of such Critical Vendor Claims is authorized by sections 363 and 364 of the Bankruptcy Code, and not solely by section 105(a) of the Bankruptcy Code and the necessity of payment doctrine (as discussed below). Given the Debtors' insistence upon Customary Trade Terms (or other similarly beneficial terms)

as a condition to receiving payment hereunder, the Debtors submit that the relief requested herein is consistent with, and appropriate under, sections 363 and 364 of the Bankruptcy Code.

21. As detailed above, maintaining the products and services provided by the Critical Vendors is vital to the Debtors' continuing business operations and the success of these Chapter 11 Cases. In addition, and as also detailed above, the Debtors have concluded that the Critical Vendors may cease doing business with the Debtors, or become unable to do business with the Debtors, unless their Critical Vendor Claims are paid. Such an outcome would devastate the Debtors' business and cost their estates and their creditors far more than the costs associated with paying some portion of the Critical Vendor Claims. Thus, the Debtors' other creditors will be no worse off, and in fact will fare far better, if the Debtors are empowered to negotiate such payments to achieve a smooth transition into bankruptcy with minimal disruption to their operations. In light of the foregoing, the Debtors submit that payment of the Critical Vendor Claims is plainly in the best interests of their estates and creditors.

**B.    The Court May Also Grant the Motion Pursuant to Its General Equitable Powers under Section 105(a) of the Bankruptcy Code**

22. The Court's general equitable powers are codified in section 105(a) of the Bankruptcy Code. Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984)). Under section 105(a) of the Bankruptcy Code, the Court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825 (Bankr. D. Del. 1999) ("to invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is critical to the debtors' reorganization").

23. Maintaining favorable post-petition trade terms is critical to the Debtors' Chapter 11 Cases and is in the best interests of the Debtors' estates. Payment of the Critical Vendor Claims is essential to ensure the continued availability of such trade terms. Accordingly, the Court should exercise its equitable powers to grant the relief requested herein.

**C.    The Court May Also Rely on the "Necessity of Payment" Doctrine to Grant the Relief Requested Herein**

24. The "necessity of payment" doctrine further supports the relief requested in this Motion. The "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *In re Chateaugay Corp.,* 279 (S.D.N.Y. 1987). This rule is consistent with the paramount goal of Chapter 11 - *i.e.*, "facilitating the continued operation and rehabilitation of the debtor ...." *Ionosphere Clubs*, 98 B.R. at 176.

25. Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay the pre-petition claims of certain critical vendors. *See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claims is essential to the continued operation of [the debtor], payment may be authorized"). Indeed, it is not uncommon for courts in this Circuit to authorize the payment of critical trade claims where the payment of such claims is essential to the debtors' continued operations. *See, e.g., Just for Feet*, 242 B.R. at 826 (authorizing payment of pre-petition claims of trade creditors that continue customary trade terms); *In re Dots, LLC*, Case No. 14-11016 (Bankr. D.N.J. Feb. 19, 2014) (order authorizing payment of critical vendor claims); *In re RIH Acquisitions NJ, LLC.*, Case No. 13-34483 (GMB) (Bankr. D. N.J. Dec. 2, 2013) (same); *In re Coda Holdings*, Inc., Case No. 13-11153 (CSS) (Bankr. D. Del. May 3, 2013); *In re Big M, Inc.*, Case No. 13-10233 (DHS) (Bankr. D. N.J. Jan. 24, 2013); *In re TCI 2 Holdings, LLC*, Case No. 09-13654 (JHW) (Bankr. D.N.J. Feb. 20, 2009); *In re Adamar of New Jersey, Inc.*, Case No. 09-20711 (JHW) (Bankr. D.N.J. May 1, 2009) (same); *In re 1945 Route 23 Associates, Inc.*,

-9-

Case No. 06-17474 (NLW) (Bankr. D.N.J. Aug. 17, 2006) (interim order authorizing payment of critical vendor claims); *In re Glass Group, Inc.*, Case No. 05-10532 (Bankr. D. Del. Mar. 2, 2005) (same). The Debtors respectfully submit that similar relief is warranted in these Chapter 11 Cases.

**D.   This Court Should Authorize and Direct Financial Institutions to Honor and Process Checks Related to Critical Vendor Payments**

26.   The Debtors will pay their Critical Vendors with funds drawn by checks (the "**Checks**") or by means of electronic fund transfers (the "**Electronic Transfers**"). Before the Petition Date, the Debtors remitted Checks or Electronic Transfers on account of certain claims that may not have cleared as of the Petition Date. To the extent any of the Checks or Electronic Transfers have not cleared their respective banks or financial institutions (the "**Banks**") as of the Petition Date, the Debtors request that the Court authorize and direct the Banks, in the Debtors' sole discretion, to receive, process, honor and pay the Checks or Electronic Transfers, without the need for further Court approval. If the Critical Vendors have not received payment for amounts in connection with the Critical Vendor Claims, the Debtors seek authority to issue replacement Checks, resubmit Electronic Transfers, or otherwise make payment to such pre-petition vendors on account of the Critical Vendor Claims, without the need for further Court approval. The Debtors represent that each of the Checks and Electronic Transfers can be readily identified as relating directly to the authorized payment of amounts owed on account of the Critical Vendor Claims. Accordingly, if the relief requested herein is granted, the Checks and Electronic Transfers, other than those relating to authorized payments, will not be honored inadvertently.

**E.   Failure to Pay the Critical Vendor Claims Within Twenty-One Days of the Petition Date Would Cause Immediate and Irreparable Harm**

27.   Pursuant to Bankruptcy Rule 6003, a court may grant relief regarding a motion to pay all or part of a pre-petition claim that arose before the petition date within twenty-

one (21) days after the filing of the petition if the relief is necessary to avoid immediate and irreparable harm.

28. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten a debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm"). The Debtors are unequivocally reliant on their Critical Vendors to provide the top-selling merchandise that enables the Debtors to compete in an ultra-competitive business.

29. Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to the Debtors' customers and other third parties. In contrast to Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone. Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally. *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate") (emphasis added). Indeed, the "irreparable harm" standard is analogous to the traditional standards governing injunctive relief. *See* 9 Alan N. Resnick & Henry J. Sommer Collier on Bankruptcy 4001.06[3] (15th ed. rev. 2008) (discussing source of "irreparable harm" standard under Bankruptcy Rule 4001(c)(2)). Courts will routinely consider third-party interests when granting such relief. *See, e.g., Capital Ventures Intl v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

30. The Debtors have no direct ability to prevent Critical Vendors from shutting down the Debtors' operations by refusing to deliver essential merchandise if the Debtors fail to make payment. Accordingly, the relief requested in this Motion satisfies the requirement of Bankruptcy Rule 6003.

## **WAIVER OF MEMORANDUM OF LAW**

31. Because the legal points and authorities upon which this Motion relies are incorporated herein and do not raise any novel issues of law, the Debtors respectfully request that

the requirement of the service and filing of a separate memorandum of law pursuant to Local Rule 9013-2 be deemed waived.

## **NO PRIOR REQUEST**

33. No previous motion for the relief sought herein has been made to this or to any other Court.

## **NOTICE**

33. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey; (ii) the Debtors' consolidated thirty largest unsecured creditors; (iii) counsel for the Prepetition Senior Lender and DIP Lender, c/o Choate, Hall & Stewart LLP, Attn: John F. Ventola, Esq., Two International Place, Boston, MA 02110; (iv) those parties listed on the Debtors' Core Service List; and (v) those parties who have filed a notice of appearance and request for service of pleadings in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE**, the Debtors respectfully request that this Court: (i) enter interim and final orders, substantially in the forms submitted herewith, granting the relief requested herein; and (ii) grant the Debtors such other and further relief as the Court deems just and proper.

Dated: June 18, 2014	Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/  *S. Jason Teele*
Kenneth A. Rosen, Esq.
Steven M. Skolnick, Esq.
S. Jason Teele, Esq.
Nicole Stefanelli, Esq.
Shirley Dai, Esq.
Anthony De Leo, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and Debtors-in-Possession*